# EXHIBIT "16"

# Expert Opinion Report

**Prepared by:**   Helen Zienkievicz



2119 Riverwalk Drive, #134
Moore, OK 73160
405-367-8025
405-386-6522

**Pertaining to:** Civil Action No. 2:17-cv-13024-BWA-JCW

Dr. Johannes Markus Sieber and Mina Margareta Sieber Schneiter vs. Delta Airlines Inc., Delta Flight Agent Katherine Weems, Delta Head Flight Agent Jane Doe, The Jefferson Parish Sheriff Joseph P. Lopinto, III, Sheriff's Deputy Jesse Steer and Sheriff's Deputy

**Prepared for:** Bonnie Jackson
Jackson Law International
1201 S. Orlando Ave, Suite 201
Winter Park, FL 32789

**Report Date:** August 10, 2019

**Purpose:**   This report provides facts, opinions, and the basis of the opinions regarding the duty of Delta Airlines, Inc. and its flight and ground crew employees who, on November 21, 2016, directly or indirectly interacted with Dr. Johannes Markus Sieber and Mina Margareta Sieber Schneiter during the aircraft boarding process of Delta's Flight 696 at Louis Armstrong's New Orleans International Airport, LA (MSY).

**Introduction:** I have been retained by the Plaintiffs, Dr. Johannes Markus Sieber and Mina Margareta Sieber Schneiter, through the legal counsel of Jackson Law International, as a testifying expert in the field of aviation and aircraft cabin safety, to specifically address the duty of Delta Airlines, Inc., and several of its flight and ground employees towards the Plaintiffs during Delta Airline's operation, to analyze the particular facts of this case, and determine whether any duty was violated. My opinions are based on my education, training, experience and expertise in the commercial airline industry and in aircraft cabin safety, as outlined in my CV (Appendix 1) and the review of support data detailed in Appendix 2. In addition, I have reviewed and relied on the Code of Federal Regulations (CFRs), federal department and agency regulations and documents, and Federal Aviation Administration (FAA) and applicable aviation industry standards, practices and recommendations.

**Facts:**

A. A Passenger Name Record (PNR) is an electronic documentation of a passenger's flight reservation. In addition to passenger contact and flight information it is industry practice to include critical information in a passenger's PNR such as special service requests, special meal requests, passenger injuries and mishaps, such as why a passenger was removed from or not permitted to fly on a particular flight.

B. The International Air Transport Association (IATA), is a trade organization whose membership is made up of 290 airlines from 120 countries. DL is a member of IATA. According to IATA's website, IATA helps "airlines to operate safely, securely, efficiently, and economically under clearly defined rules" (https://www.iata.org).

C. IATA's *2015 Guidance on Unruly Passenger Prevention and Management, 2nd Edition* recommended that airlines "maintain accurate and updated reports and statistics on incidents that occur to continually monitor types of incidents, trends, and if required, training needs".

D. It is airline industry practice and standard operating procedure for ground, flight and cabin crew (aka flight attendant) personnel to submit written or recorded documentation to their employer and in some cases to the FAA, TSA, or other regulatory agencies when they witness or encounter incidents involving passengers who are perceived to pose a safety or security threat.

E. "The IATA Passenger Services Conference Resolutions Manual" "includes *Recommended Practice 1798a Handling Disruptive/Unruly Passengers,* which calls for the creation of a policy that addresses prevention, training, periodic re-training, handling problem passengers, categorizing of incidents, reporting of incidents, the Captain's responsibility, prosecutions, communication, and procedures to be followed for: boarding, inflight, underage passenger issues (e.g. alcohol service) and alcohol/smoking situations" (IATA Unruly Passenger Prevention and Management 2nd Edition, January 2015).

F. Deputy Jesse Steer wrote in his Crime Report about that "Ms. Weems and Delta Airlines refused to pursue charges and issue statements." (Delta 00003). He contradicted his written statement in his sworn deposition testimony, by stating he came to this conclusion because the DL flight attendant that he had originally spoken to and the flight that she was on had already departed the gate when he returned to get the flight attendant and witness statements.

    G. DL's employee Taina F. Hernandez's emailed response to Dr. Sieber, dated December 15, 2016, stated "It has been documented by our In-Flight crew that law enforcement boarded the aircraft to remove both you and your wife."

**Opinions with Basis and Reasoning:** Based on a review of the material provided, to date, my airline management experience, and cabin safety expertise and training, I have come, with a reasonable degree of certainty, to the following conclusions as they relate to this case.

1) As of this date, Delta Airlines, Inc. (DL) has not been forthcoming in providing Plaintiff's counsel with all written, electronic, and/or recorded verbal reports that were submitted, or should have been submitted to DL, by DL flight attendants; Katherine Weems, Dominik Morales, and/or Page Rushing and by the DL captain of November 21, 2016's Flight 696 from MSY to John F. Kennedy Airport, NY (JFK) and by DL operations service manager, Kyla Singleton who was reported to have interacted with Dr. Sieber on November 21, 2016.  In her emailed response to Dr. Sieber, Ms. Hernandez implied that such reports existed when she stated; "it has been documented by our In-Flight crew that law enforcement boarded the aircraft to remove both you and your wife."

2) DL has not provided other information that was requested by the Plaintiff's counsel, and that is customary for airlines to provide in similar cases. Examples of such documents/information include all documentation made by DL employees in Dr. and Mrs. Sieber's Passenger Name Record (PNR), copies of DL's flight attendant operations manual pertaining to policies and procedures, and training material relating to flight attendant responsibilities in regarding assisting passengers during the boarding process, stowing of carry-on luggage and dealing with unruly passengers.

3) Dr. Sieber's sworn deposed testimony and his written letters and email description of his behavior prior to and while seated in his assigned seat on the date of the incident did not exemplify the types of behavior, such as being verbally or physically confrontational with crew members or passengers, or demonstrating riotous behavior, that IATA and the industry view as unruly or disruptive behavior. Dr. Sieber's testimony leads me to form the opinion that DL and the deputies acted in concert to remove Dr. Sieber from the airplane for an inappropriate purpose.

4) Even if Dr. Sieber's behavior had been deemed to be unruly, Delta Airlines and the DL flight attendants and ground crew, who interacted with Dr. Sieber on the day of the incident failed to follow recommendations made by the International Air Transport Association's (IATA) *2015 Guidance on Unruly Passenger Prevention and Management*. Examples of IATA's preventative measures, training, and awareness recommendations include:

    a) "Provide training for frontline employees (ground staff, cabin crew, flight crew) to learn how to recognize the early signs of potentially unruly behavior to ensure that those who are in direct contact with passengers have acquired necessary verbal and de-escalation skills to handle these types of situations."

    b) "On those occasions when tact, reassurance and interpersonal skills fail to resolve an incident, it is vital that the staff have guidance to identify and handle these behaviors."

5) It is industry practice, standard operating procedure, and an example of good customer service, for flight attendants to provide guidance to the passenger and assistance in moving items in the overhead bin in order to better accommodate the passenger in the stowage of a personal bag. Based on Dr. Sieber's sworn deposition testimony and the circumstances surrounding the incident that have been detailed in the provided documents provided, I conclude that the flight attendant, who was closest to Dr. Sieber, made no attempt to communicate with him, diffuse the situation, reposition items in the overhead bin, or assist him in retrieving the blankets that had fallen out of the bin.

6) I have also concluded, based on the sworn testimony depositions of Dr. Sieber and Deputy Jesse Steer, that at the time of the incident, while Dr. Sieber was quietly seated on the plane, no DL flight attendant, captain, or ground representative or the two arresting law enforcement officers attempted to illicit from Dr. Sieber his account of what took place on DL flight 696 on November 21, 2016. Nor did any of these individuals explain to Dr. Sieber at the time that they were instructed to gather up their personal items and leave the plane the reason why he and his wife were being asked to take such action. It is my expert opinion that had they taken the time to illicit information from Dr. Sieber and to explain to him their reason for instructing him to leave the plane that their actions would have de-escalated the situation.

7) The absence of documentation from DL, describing what, if any, investigation and actions were taken to determine what actually occurred on this flight, if Dr. Sieber's bag actually made contact with the near-by flight attendant and, if so, was it the result of an intentional act or an accident leads me to conclude that DL failed to practice good safety investigation and risk mitigation. Had a thorough investigation been done at the time of the event DL would have been able to identify contributing factors, determine if the crew's actions complied with IATA and company guidelines and industry standards, and if not, what employee training or communication enhancements need to be implemented to prevent a similar passenger mishandling incident.

8) A thorough investigation should have been made by DL representatives and law enforcement personnel to include interviewing and obtaining verbal and written statements from crew members, Dr. Sieber and passenger witnesses. I would then expect those investigating this incident to determine if the involved flight attendant wished to file a criminal complaint against the passenger. According to one airline's communication to involved employees, "pursuing this option is typically easiest if the police arrive at the scene of the incident while the customer is still present and a report/complaint is completed by the employee at that time" (*After An Incident Your Legal Rights, 2007, United Airlines*). I also find it strange that this lifetime DL travel ban was not formally communicated to Dr. Sieber in the form of a letter from DL's legal department or a senior management representative from DL's Safety and Security Division.

9) In light of DL's failure to produced documents or information that indicate that the company has followed-through with IATAs recommendation that each company formalize policies, processes, plans, and procedures for obtaining information for addressing perceived passenger disturbances or unruly passengers, I conclude that DL has not complied with IATA guidance and recommendations. In my opinion DL had not demonstrated that the company has a formalized process for making the determination and communicating to Dr. Sieber that DL had implemented a "life time travel ban" which prevents him from travel on any DL flights.

**Summary:** As a former member of the US Air Transport Association (now dba Airlines for America (A4A)), Cabin Operations Unruly Passenger Sub-Committee and former Manager of Health, Safety and Security for a major airline and someone who was instrumental in the establishment of a formalized program that addressed communication, training, operational and legal implications, for that airline when dealing with perceived passenger misconduct or threats, I found the actions of the cited DL representatives and DL as a whole to be, in this case, substandard and not in compliance with industry standards and practices and the IATA guidelines and recommendations.

The opinions rendered in this report are stated to a reasonable degree of certainty in the field of aviation, airline cabin safety and healthcare and nursing training and experience. I reserve the right to amend my opinions, and this report, should new information pertaining to this case be made available to me.

_[signature]_                                                                                     Date: August 10, 2019

Helen Zienkievicz of Cabin Safety Consultants

**HELEN ZIENKIEVICZ**   Appendix 1: Sieber(s) vs DL, et.al.
2119 Riverwalk Drive, #134
Moore, OK. 73160
Email: cabinsafetycons@gmail.com
Business Phone: 405-367-8025, Cell Phone: 720-560-3248, Home Phone: 405-386-6522

**PROFESSIONAL EXPERIENCE**

**Chief Executive of Cabin Safety Consultants**   2007-present

- Educate the public and industry about aviation safety through various forums and media venues.
- Aviation safety training consultant and expert witness in cabin and airline safety litigation cases.

**President of Health Leaders Promoting Safety (HLPS)**   2007-present

- Perform health screening exams, safety assessments and coaching in a variety of business settings.

**Nurse Practitioner & Adjunct Faculty at various facilities in Colorado & Oklahoma.**   1978-present

- Cardiac Nurse Practitioner at Porter Adventist Hospital: evaluating and stress testing cardiac & TIA patients.
- Nurse Practitioner at Hospice Quality Care & Integris Hospice in OK: perform Medicare assessments on hospice patients.
- Nurse Practitioner at CRG Labs of Oklahoma: Perform DOT, CDL, OSHA and pre-employment exams.
- Former Occupational Nurse Practitioner for United Airlines: Performed physical exams on pilots, managers and pre-employment ramp, mechanics, food-service, customer service agents and flight attendant applicants.
- Former clinical instructor for Associate and Baccalaureate degree nursing students for two Oklahoma colleges.
- Develop & instruct nurses in Nurse Preceptor, Hospital Leadership and Basic Arrhythmia Interpretation.

**Manager of Health, Safety, & Security-Onboard Service, United Airlines, Chicago, IL**   2004-2007

- Principle cabin safety liaison to the Federal Aviation Administration and Transportation Security Administration.
- Established and chaired the first major airline flight attendant Aviation Safety Action Program.
- Manager of department responsible for investigating onboard (in-flight) emergencies, injuries and incidents.
- Advisor and co-developer of divisional policies, training and communication venues pertaining to flight attendant health, safety and security related matters.

**Airport Manager for United Airlines in Lincoln, NE and Oklahoma City, OK**   2000-2004

- Responsible for budget and manpower planning for two airports that operated 6-20 flights per day.
- Managed 28-40 customer service, ramp, airfreight & and station control center employees. Oversaw hiring, training, performance, and safety & security related matters for two general airport operations.
- Represented United Airlines in discussions with local airport authority, local law enforcement, the FAA, the Transportation Security Administration, union representatives, EEOC, ADA, EPA, DOT, OSHA, etc.

**Supervisor of Flight Attendants and Customer Service Representatives, United Airlines**   1997-2000

- Responsible for promoting safe work practices, in compliance with FAA & OSHA regulations, while meeting on-time performance, baggage service delivery and customer satisfaction goals.
- Co-wrote and trained Denver Customer Service Supervisors in United's Emergency Response Procedures.

**Senior In-flight Safety Investigator, United Airlines, Chicago IL.**   1995-1997

- Regulatory advisor to the Vice President of Corporate Safety and Security and Onboard Service Sr. Vice President in flight attendant hiring, emergency training needs, injury prevention programs and safe work practices.
- Wrote and published *Partners in Safety* newsletter which was distributed to over 24,000 flight employees.
- Raised industry and public's level of awareness regarding turbulence injuries by producing two dramatic videos which were shown at the Southern California Safety Conference and distributed to 30 International Air Carriers.

Pg. 2  Helen Zienkievicz CV

**Emergency Procedures Instructor United Airlines, Denver CO.**                                    1989-1995

- Instructed commercial pilots and flight attendants in the management of evacuations, ditching, in-flight fires, security threats, decompressions, medical emergencies, CRM and the operation of exits and equipment on all UAL aircraft.
- Served as a consultant to Boeing in the development of the B-777 doors and emergency equipment.
- Created an instructor-training library composed of AV and written material from past accidents and emergency related topics. The library enhanced the training of new instructors while assuring the proficiency of incumbents.
- Developed training programs for both pilots and flight attendant management of inflight emergencies.

**ADDITIONAL EXPERIENCE**

- **Consultant** to the Army Corps of Engineers, ARCO, Exxon, Chevron, and Gulf Coast Transit. Trained tug and oil tanker ship captains in the management of offshore medical emergencies, trauma care, ship-to-shore communications and off-vessel evacuations.
- **Speaker** at a number of forums, including the International Aircraft Cabin Safety Symposium, World Aviation Training Symposiums, FAA Shared Vision of Aviation Safety Conference, US Department of Justice - US Marshals Service Justice Prisoner and Alien Transportation System (JPATS), Arapahoe Community College, AT&T and Samedan Oil Company. Topics included: Cabin Aviation Safety Action Program, Managing Medical Emergencies Inflight, Aviation Safety, Flight Attendant Back Injury Prevention, Turbulence Injury Prevention, How to Travel Safely, Stress Management, First Responder Training and Behavioral Based Safety.
- **Attendant** of IATA Cabin Safety Conference (2016) & World Aviation Training Symposium ('07,'08,'13, '14, '16, '17, '18)

**TRAINING**

- Cabin Safety Research Workshop - FAA Aerospace Medical Research Division of the Civil Aerospace Medical Institute
- Department of Transportation & NTSB Aircraft Cabin Safety Investigation
- Incident Response to Terrorist Bombings Awareness Training – New Mexico Tech
- FAA Aviation Safety Action Programs
- International Air Transport Association (IATA) Cabin Health Symposium & 2016 IATA Cabin Safety Symposium
- Open Doors Organization CRO Refresher Training 2019
- Behavioral Based Safety Principles
- Basic and Advanced Cardiac Life Support
- Private pilot instruction & FAA certificated flight attendant

**PROFESSIONAL MEMBERSHIPS**

- Former member of Airline Transport Association (aka A4A)  – Cabin Operations Committee
- American Academy of Nurse Practitioners
- Oklahoma Nurse Practitioner Association
- Hospice & Palliative Nurses Association: Program Chairperson for Oklahoma Chapter

**EDUCATION**

| | | |
|---|---|---|
| Masters of Science in Nursing | University of Phoenix | Phoenix, AZ |
| Adult Nurse Practitioner | Metropolitan State College | Denver, CO |

**LICENSES & Certifications**

American Nurses Credentialing Center – Board Certified Adult Nurse Practitioner
Licensed Adult Nurse Practitioner in: Arizona, Colorado and Oklahoma
Certified Federal Motor Carrier Safety Administration Medical Examiner
Private pilot: inactive